UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
TEXAS 1845 LLC,

                    Plaintiff,

          -against-                        MEMORANDUM & ORDER
                                           11-CV-1825 (JS)(ETB)
WU AIR CORPORATION, WU AVIATION
CORPORATION, MAINE AVIATION AIRCRAFT
MAINTENANCE LLC, MAIN AVIATION
AIRCRAFT CHARTER LLC and ALLYN
CARUSO,

                    Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:          Thomas E. Stagg, Esq.
                        Debra L. Wabnik, Esg.
                        Stagg, Terenzi, Confusione & Wabnik, LLP
                        401 Franklin Avenue, Suite 300
                        Garden City, NY 11530

For Defendants:
Wu Defendants           Shibu John Jacob, Esg.
                        Shestack & Young LLP
                        233 Broadway, Suite 2200
                        New York, NY 10279

Maine Aviation          Mark Kenneth Silver, Esq.
Defendants              Coughlin Duffy LLP
                        350 Mount Kemble Avenue
                        Post Office Box 1917
                        Morristown, NJ 07962


SEYBERT District Judge:

          Plaintiff  Texas  1845  LLC  sued  Defendants  Wu  Air

Corporation ("Wu Air"), Wu Aviation Corporation ("Wu Aviation"),

Maine  Aviation  Aircraft  Maintenance  LLC  ("Maine  Maintenance"),

Main  Aviation  Aircraft  Charter  LLC  ("Maine  Charter"),  and  Allyn

Caruso  to  recover  on  promissory  notes  that  were  used  to  finance

two airplanes.    Pending before the Court are three motions.

First, Plaintiff moves to dismiss Wu Air and Wu Aviation's (together, the "Wu Defendants") counterclaims and certain of their affirmative defenses.    (Docket Entry 12.)    Second, Plaintiff moves to dismiss Main Maintenance, Main Charter, and Allyn Caruso's (collectively, the "Maine Defendants") counterclaims and one of their affirmative defenses.    (Docket Entry 13.)    Third, Plaintiff moves the Court to appoint a receiver for certain collateral and for the Wu Defendants' businesses.    (Docket Entry 25.)

BACKGROUND

The following discussion draws from Plaintiff's Complaint, the Wu Defendants' Answer and Counterclaims, and Plaintiff's motion to appoint a receiver.

## I. Plaintiff's Allegations

The Wu Defendants borrowed millions of dollars to finance two airplanes.    In December 2006, Wu Aviation executed a promissory note (the "Aviation Note") in the principal amount of $6,600,000 payable to Key Equipment Finance, Inc. ("Key Equipment").    (Compl. ¶ 11.)    Pursuant to a security agreement (the "Aviation Security Agreement"), the Aviation Note was secured, in part, by a British Aerospace model BAE 125-1000A airplane (the "Hawker") and its engines and accessories, including its logbooks (the "Hawker Logbooks").    (Id. ¶ 19.)

Among other things, the Aviation Security Agreement provided that the secured party will have the right to inspect the Hawker and the Hawker Logbooks. (Id. ¶ 21.) The secured party's remedies included court action, self-help, or any other lawful remedy, and the Aviation Security Agreement provided that the secured party's remedies were cumulative. (Id. ¶¶ 21-24.)

In October 2007, Wu Air executed a promissory note in the principal amount of $8,342,505 payable to Key Equipment. (Id. ¶ 15.) In December 2008, Wu Air executed a second note, this time in the principal amount of $5,000,000, which was also payable to Key Equipment. (Id. ¶ 16.) The Court will refer collectively to the Wu Air promissory notes as the "Air Notes." Pursuant to a security agreement (the "Air Security Agreement"), the Air Notes were secured in part by a Bombardier model CL-600-2B19 aircraft (the "CRJ") and its engines and accessories, including its logbooks (the "CRJ Logbooks"). (Id. ¶¶ 25-26.) Among other things, the Air Security Agreements provided the secured party with the right to inspect the CRJ and the CRJ Logbooks. (Id. ¶¶ 28-29.) The secured party's remedies--which were cumulative--included court action and self-help. (Id. ¶¶ 30-31.)

In September 2007, Wu Air entered into an aircraft charter and lease agreement with Maine Charter (the "CRJ Charter Agreement") to allow Maine Charter to use the CRJ in its air

3

charter service. (Id. ¶ 32.) The agreement provided, among other things, that Wu Air was entitled to 85% of the monthly gross charter flight revenues attributable to the CRJ. (Id. ¶ 34.) In turn, Maine Charter entered into charter contracts (the "Charter Contracts") under which at least three companies agreed to pay Maine Charter for charter services associated with the CRJ. (Id. ¶ 36.)

The CRJ Charter Agreement was assigned to Key Equipment in October 2007. (Id. ¶ 34.) The assignment provided that, in the event of a default under the Wu Air Security Agreement, Key Equipment would be entitled to take any action to collect rents or other amounts due under the CRJ Charter Agreement. (Id. ¶ 35.)

The Wu Defendants failed to make the payments required by the Aviation Note and the Air Notes, respectively, and Key Equipment accelerated the balance due under the notes. (Id. ¶ 37–38.)

In December 2010, Key Equipment assigned their interest in the Aviation Note, Air Notes, Security Agreements, and CRJ Charter Agreement to Plaintiff. (Id. ¶ 41.) Following this assignment, Plaintiff demanded that it be allowed to inspect the CRJ, the Hawker, and the logbooks for each aircraft. (Id. ¶ 43.) Wu Defendants refused this demand and moved the collateral to an undisclosed location. (Id. ¶ 45.) Plaintiff

was eventually able to repossess the CRJ, but it has not been able to locate the Hawker or the Logbooks for either the CRJ or the Hawker. (Id. ¶ 49.)

## II. The Wu Defendants' Counterclaims

The Wu Defendants allege that on February 9, 2011, "employees or agents" of Plaintiff went to Teterboro Airport in New Jersey, where the CRJ was being prepared for a chartered flight. These employees or agents "made false representations with respect to the CRJ," including that Plaintiff "had the right to repossess the plane" and that "title to the CRJ would be transferred in 15 minutes." (Wu Countercls., Docket Entry 10 ¶ 9.) Through "intimidation," the employees attempted to coerce Maine Maintenance's and Maine Charter's employees to turn the CRJ over to Plaintiff. (Id.) Although Plaintiff's efforts to reclaim the CRJ were ultimately unsuccessful, Plaintiff's actions caused Maine Charter to lose its charter contracts. (Id. ¶ 10.) The contract cancellations were to the ultimate detriment of Wu Air. (Id. ¶ 10.)

According to the Wu Defendants, Plaintiff made false statements to the Federal Aviation Administration (the "FAA") on February 10, 2011. Specifically, the Wu Defendants claim that Plaintiff filed a Certificate of Repossession of Encumbered Aircraft that falsely claimed that (1) Plaintiff had repossessed and foreclosed on the CRJ on February 10, and (2) the Wu

Defendants had been "divested of ownership of the airplane." (Id. at 13.)[1]

The Wu Defendants further allege that on March 22, 2011, the CRJ was being stored at MacArthur Airport in Islip, New York. On that day, Plaintiff's agents travelled to the airport, presented unspecified "documentation" to airport personnel in order to persuade them that Plaintiff had a right to repossess the airplane, and falsely stated that Jeffrey Wu-- presumably a principal of the Wu Defendants--had authorized Plaintiff to take the airplane. (Id. at 14.) In fact, Jeffrey Wu had not authorized Plaintiff to take the CRJ and, pursuant to an order from New York Supreme Court, Wu Air owned the CRJ and had the right to use it within the continental United States. (Id. ¶ 13.) Nevertheless, Plaintiff's agents took possession of the CRJ at MacArthur Airport and flew it to Texas. (Id. ¶ 14.)

III. Plaintiff's Motion to Appoint a Receiver

In addition to the allegations set forth in its Complaint, discussed supra, Plaintiff asserts in its motion to appoint a receiver that the Wu and Maine Defendants "engaged in a course of conduct to purposefully evade and divert [P]laintiff from taking the [c]ollateral." (Pl. Receiver Br. 2.) According

_____

[1] The counterclaims portion of the Wu Defendants' Answer contains mis-numbered paragraphs. (See generally Docket Entry 10.) Where appropriate, the Court refers to the ECF page number.

to Plaintiff, the aircraft logbooks--without which the value of the planes decreases dramatically--have not been properly secured, thus creating a risk that they will be lost, stolen, or damaged. (Id. at 6.) It also claims that the Wu Defendants misled Plaintiff about the Hawker's location (Pl. Receiver Reply 4), that they have not been forthcoming about their current business address (Pl. Receiver Br. 8), and that they forfeited their right to do business under Delaware law (id.).

## IV. The Maine Defendants

The Maine Defendants have not filed an Answer with the Court, either on the Court's Electronic Case Filing ("ECF") or in hard copy. This appears to be an oversight inasmuch as there is no indication that the Maine Defendants have not been defending the case all along.[2] Obviously, though, the Court cannot address a motion to dismiss counterclaims that are not before it.

## DISCUSSION

For the following reasons, Plaintiff's motion to dismiss the Wu Defendants' counterclaims and strike certain affirmative defenses is granted in part and denied in part. Its motion to dismiss the Maine Defendants' counterclaims and an affirmative defense is denied without prejudice. Its motion to

---

[2] The Maine Defendants sent courtesy copies of their papers opposing Plaintiff's motion to dismiss their counterclaims to Chambers, but they did not file them with the Court.

appoint a receiver is denied with guidance if Plaintiff again
moves the Court to appoint a receiver.

I. Plaintiff's Motions to Dismiss the Counterclaims

The familiar plausibility standard that governs
motions to dismiss under Federal Rule of Civil Procedure
12(b)(6) applies to motions to dismiss counterclaims. See
Nowicki v. Toll Bros., Inc., No. 10-CV-4877, 2012 WL 14258, at
*1 (E.D.N.Y. Jan. 4, 2012). To survive a motion to dismiss a
counterclaim, the counterplaintiff must plead sufficient factual
allegations in the complaint to "state a claim [for] relief that
is plausible on its face." Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949
(2007). The counterclaim does not need "detailed factual
allegations," but it demands "more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action
will not do." Id. at 555. In addition, the facts pleaded in
the counterclaim "must be enough to raise a right to relief
above the speculative level." Id. Determining whether a
counterplaintiff has met his burden is "a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense." Harris v. Mills, 572 F.3d 66, 72
(2d Cir. 2009). On a motion to dismiss, the Court accepts the
counterplaintiff's factual allegations as true and draws all
reasonable inferences in its favor, see, e.g., Litwin v.

<u>Blackstone Group, L.P.</u>, 634 F.3d 706, 711 n.5 (2d Cir. 2011), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

A. <u>The Wu Defendants' Counterclaims</u>

Plaintiff moves to dismiss all four of the Wu Defendants' counterclaims: (1) tortious interference with contractual relations; (2) conversion; (3) defamation; and (4) fraud. The Court addresses each in turn.

1. <u>Tortious Interference with Contractual Relations</u>

To prevail on a tortious interference theory, a claimant must establish: "(1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to the plaintiff resulting therefrom." <u>Pacific Carlton Dev. Corp. v. 752 Pacific, LLC</u>, 62 A.D.3d 677, 679, 878 N.Y.S.2d 421, 423 (N.Y. App. Div. 2d Dep't 2009); <u>Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.</u>, 59 A.D.3d 473, 476, 873 N.Y.S.2d 679, 682 (2d Dep't 2009). The Wu Defendants apparently argue that Plaintiff's efforts to repossess the CRJ caused various customers, including a rock band, to cancel their charter contracts with Maine

Charter and that these cancellations were to the detriment of Wu Air. (Wu Countercl. Opp. 3.) The Wu Defendants do not allege that Plaintiff had any knowledge of Maine Charter's charter contracts, however, and thus cannot sustain this counterclaim. Boehner v. Heise, 734 F. Supp. 2d 389, 404 (S.D.N.Y. 2010).

### 2. Conversion

"To establish a cause of action in conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights." Five Star Bank v. CNH Capital Am., LLC, 55 A.D.3d 1279, 1281, 865 N.Y.S.2d 190, 192 (4th Dep't 2008) (quoting Castaldi v. 39 Winfield Assoc., 30 A.D.3d 458, 820 N.Y.S.2d 279) (internal quotation marks omitted). Here, the Wu Defendants allege that they had a superior right of possession to the CRJ (Wu Countercl. ¶ 13) and that Plaintiff "exercised an unauthorized dominion" over the CRJ by taking it from MacArthur Airport under false pretenses (see id. ¶ 14). This is sufficient to state a claim.

Plaintiff argues that the Wu Defendant's conversion claim is "baseless" because, in its view, a state court has already ruled that its repossessing the CRJ was legal. (Pl. Wu Br. 7-8.) In support, it cites a transcript from a proceeding

in what appears to be a related case, <u>Texas 1845 LLC v. Myint J.</u>
<u>Kyaw</u>, No. 3202-2011, in New York Supreme Court, Nassau County
(the "State Court Action"). (<u>See</u> Debra Wabnik Aff. Ex. A.)   In
that proceeding, Justice Lawrence K. Marks opined that "it seems
pretty clear" that Plaintiff had a right to take the CRJ and
that Plaintiff "seemed to have a legal right to do what they
did." (<u>Id.</u> at 11, 15.)   These quotes do not amount to a clear
finding that Plaintiff had a superior right to the CRJ than the
Wu Defendants.

     3. <u>Defamation</u>

     The Wu Defendants claim that Plaintiff defamed them
"by asserting that [they] had no rights in the CRJ and Hawker,
respectively, otherwise impugning [their] business reputation."
(Wu Countercls. ¶ 26.)   As an initial matter, there is no
allegation in the Wu Defendants' counterclaims that Plaintiff
made false statements concerning the Hawker.   The only
potentially actionable defamatory statements are (1) Plaintiff's
agents' statement to the ground crew at Teterboro that Plaintiff
"had the right to repossess the [CRJ]" and that "title to the
CRJ would be transferred in 15 minutes;" (2) Plaintiff's
statements to the FAA that it had repossessed an aircraft and
that Wu Air and Wu Aviation had been "divested of ownership;"
and (3) Plaintiff's agents' statement to the ground crew at

MacArthur Airport that Jeffrey Wu had authorized Plaintiff to take the CRJ.[3]

To plead a defamation case, a claimant must allege "(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege." TC v. Valley Cent. Sch. Dist., 777 F. Supp. 2d 577, 603 (S.D.N.Y. 2011); see also, e.g., Dillon v. City of N.Y., 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999). As is relevant to this case, a "defamatory" statement may be one that causes "[r]eputational injury to a person's business, or to a company, [and] consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties." Freedom Calls Found. v. Bukstel, No. 05-CV-5460, 2006 WL 845509, at *18 (E.D.N.Y. Mar. 3, 2006).

---

[3] To the extent the Wu Defendants attempt to hang a defamation claim on their allegation that Plaintiff's agent used "documentation" to persuade MacArthur Airport personnel that Plaintiff had a right to take the CRJ (Wu Countercls. at 14), this claim is insufficiently pled. Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 763 (2d Cir. 1990) (rejecting slander claim under New York law in part because plaintiff failed to allege the "actual words spoken").

In this case, only the second alleged statement is actionable. The first statement is not "of and concerning" the Wu Defendants because the speaker did not mention the Wu Defendants and there is no allegation that the ground crew at Teterboro would have understood that the owner of the CRJ, from whom the speaker was allegedly attempting to repossess the plane, was either Wu Air or Wu Aviation. See Kirch v. Lib. Media Corp., 449 F.3d 388, 399 (2d Cir. 2006) (noting that a statement may be defamatory where, "though not naming the plaintiff, [it] could have been understood by a reasonable reader as being, in substance, actually about him or her"). The third statement--that Jeffrey Wu had authorized Plaintiff's agents to fly the CRJ--is not defamatory because it does not "impute[] some form of fraud or misconduct or a general unfitness, incapacity, or inability" to do business. Freedom Calls, 2006 WL 845509, at *18.

The second statement--Plaintiff's statement to the FAA that it had repossessed an aircraft and that the Wu Defendants had been divested of their rights--is another matter. Plaintiff argues that such a statement cannot be interpreted as impugning the Wu Defendants' fitness for business and thus cannot be libel per se. The Court disagrees because, in its view, a charge that a business had its airplane repossessed is akin to a statement that a business cannot or will not pay its bills. And, courts

have explained that falsely disparaging a plaintiff's creditworthiness or falsely claiming that a business is insolvent is sufficient to state a defamation claim in New York. De Seversky v. P. & S. Pub., 34 N.Y.S.2d 284, 285 (Sup. Ct. N.Y. Cty. 1942) ("A charge of insolvency, bankruptcy or want of credit is actionable per se . . . ."); see Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 670, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858, 862 (1981) ("Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed."); see also Medina v. United Press Assocs., 185 N.Y.S.2d 366, 368 (Sup. Ct. N.Y. Cty. 1959) ("Bankruptcy is not a disgrace nor does it imply incapacity or wrongdoing yet a charge of bankruptcy is universally regarded as libelous." (citation omitted)); cf., Eli E. Albert, Inc v. Dun & Brad-Street, 91 F. Supp. 283, 284 (S.D.N.Y. 1950). Accordingly, Plaintiff's motion to dismiss the Wu Defendants' defamation counterclaim is denied.

### 4. Fraud

The elements of fraud under New York law are (1) a "material false representation"; (2) made with an intent to defraud the plaintiff; (3) the plaintiff's reasonable reliance on the false representation; and (4) damages. Wall v. CSX Transp., Inc., 471 F.2d. 410, 415-16 (2d Cir. 2006). Under Federal Rule of Civil Procedure 9(b), claimants must allege the

14

circumstances surrounding the fraud with particularity.  E.g., Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000).  The Wu Defendants do not contest Plaintiff's argument that they have failed to plead their fraud claim with the particularity generally required by Rule 9; rather, they argue that their allegations are sufficient because they provide Plaintiff with "fair notice" of their theory.  (Wu Countercl. Opp. 6.)  Even if the Court were to relax the particularity requirement, the Wu Defendants' claim would still fail.  The Wu Defendants' theory is apparently that Plaintiff defrauded them by falsely telling the FAA that it had repossessed an aircraft and by falsely telling the ground crew at MacArthur Airport that Jeffrey Wu had authorized Plaintiff to take the CRJ.  (Id. at 7.)  There is no allegation that the Wu Defendants reasonably relied on these statements, however, and thus they cannot maintain a fraud claim.

   B.  The Maine Defendants' Counterclaims

        As discussed already, the Court cannot address a motion to dismiss counterclaims in an answer that has not been filed.  The parties are directed to the Conclusion, infra, for further directions.

II. Plaintiff's Motions to Strike

        Plaintiff also moves to strike certain affirmative defenses.  In considering motions to strike under Federal Rule

of Civil Procedure 12(f), courts examine two prongs: <u>first</u>, whether there are "substantial questions of law or fact that might allow the defense to succeed;" and <u>second</u>, whether Plaintiff would be "prejudiced if the affirmative defense remained in the pleadings." <u>Wausau Bus. Ins. Co. v. Horizon Admin. Servs., LLC</u>, __ F. Supp. 2d __, 2011 WL 2945827, at *2 (E.D.N.Y. July 21, 2011). The first inquiry is governed by the same standard that applies to motions to dismiss under Federal Rule 12(b)(6). <u>Id.</u> In evaluating prejudice, courts consider, among other things, whether the affirmative defense may increase the time and expense of litigation. <u>Id.</u>

A. <u>The Wu Defendants' Affirmative Defenses & Jury Demand</u>

As against the Wu Defendants, Plaintiff moves to strike the following defenses: (1) lack of personal jurisdiction; (2) pending state court actions; (3) election of remedies; and (4) payment. (Pl. Wu Brief 15-16.) Plaintiff also moves to strike the Wu Defendants' demand for a jury trial. The Court addresses each of these requests below. (<u>Id.</u> at 16-17.)

1. <u>Personal Jurisdiction</u>

The personal jurisdiction defense must be struck. The Wu Defendants consented to jurisdiction in New York in the Security Agreements (Compl. Exs. D, E § 8.1 (consenting to jurisdiction and consenting to service by mail)), a point the Wu

Defendants do not contest. (See Wu Countercl. Opp. 7.) Rather, they claim that Plaintiff has not filed an affidavit evidencing proof of service of process. The Court notes that the Wu Defendants do not claim that they were not actually served and, in any event, their claim that Plaintiff did not submit affidavits of service is demonstrably wrong. (Docket Entries 5, 6.) Further, allowing this affirmative defense to remain in the pleading would prejudice Plaintiff by creating the potential that the Wu Defendants will attempt to litigate the jurisdiction issue further.

### 2. Pending State Court Litigation

Plaintiff argues that the Wu Defendants should be foreclosed from arguing that the related state cases, which are apparently pending in Maine and New York, bar this Court from hearing this case. (Pl. Wu Br. 12-13.) Where there are parallel federal and state proceedings, a district court may abstain from hearing the federal suit "in exceptional circumstances, when the concept of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' so counsels." Lasker v. UBS Sec. LLC, 614 F. Supp. 2d 345, 354 (E.D.N.Y. 2008) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). In evaluating whether Colorado River abstention

is appropriate, the Court must first determine whether "the concurrent proceedings are parallel, meaning they involve substantially the same parties and issues." Id. If so, the Court weighs six factors, including "desirability of avoiding piecemeal litigation." Colorado River, 424 U.S. at 818. No factor is dispositive, and the balance is weighed heavily against abstention. Lasker, 614 F. Supp. 2d at 354.

Although the Court is generally aware that Plaintiff has also sought some type of relief in state courts in Maine and New York, to date no party has adequately explained to the Court the issues, parties, or posture of the concurrent state court proceedings. Thus the Court cannot determine whether these actions are parallel to this suit and, if so, whether staying this case would avoid piecemeal litigation. Accordingly, the Court declines to strike this affirmative defense.

### 3. Election of Remedies

The Wu Defendants' election of remedies affirmative defense must be struck. A secured party's remedies against a defaulting debtor are generally cumulative, see N.Y. U.C.C. § 9-601; Chem. Bank v. Alco Gems Corp., 543 N.Y.S.2d 426, 428 (1st Dep't 1989), and the Notes contained a provision to that effect. (Compl. Exs. D, E § 5.3.) The Wu Defendants protest that Plaintiff is not entitled to a double recovery (Wu Countercl.

Opp. 9); of course, nothing in this Order should be read as permitting Plaintiff to recover a windfall.

### 4. Payment

The Court declines to strike the Wu Defendants' affirmative defense of payment. The Wu Defendants claim that they made "substantial payments" on the Notes (Kyaw Aff. ¶ 5); the existence and amount of those payments are questions of fact that precludes Plaintiff's motion to strike.

### 5. Jury Demand

The jury demand must be struck. The Wu Defendants waived any right to a jury trial in the Security Agreements, which each contain a clear jury waiver clause. (Compl. Exs. D, E § 8.12.) Notwithstanding the Wu Defendants' argument, the waiver clause was not "placed discreetly in the contract" (Wu Counterclaim Opp. 13); on the contrary, it--unlike the majority of the contract--is typed in all capital letters. A contractual jury waiver is enforceable if "it is made knowingly, intentionally, and voluntarily," Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007), and the Wu Defendants' argument that the Court should ignore the language of the Security Agreements is wholly unpersuasive.

### B. The Maine Defendants' Third Affirmative Defense

As discussed already, the Court will not address Plaintiff's motion against the Maine Defendants until the Maine

Defendants file their Answer with the Court.  The parties are directed to the Conclusion, _infra_, for further directions.

III. <u>Plaintiff's Motion to Appoint a Receiver</u>

Plaintiff moves separately for an order appointing a temporary receiver over (1) the Hawker and the Logbooks, and (2) the Wu Defendants.  In diversity cases, whether or not to appoint a receiver is governed by federal common law, and district courts generally consider the following factors:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

<u>Varsames v. Palazzolo</u>, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting Wright & Miller § 2983) (alteration in <u>Varsames</u>). "[T]he appointment of a receiver is considered to be an extraordinary remedy, and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property."  <u>Rosen v. Siegel</u>, 106 F.3d 28, 34 (2d Cir. 1997) (quoting <u>Citibank, N.A. v. Nyland (CF8) Ltd.</u>, 839 F.2d 93, 97 (2d Cir. 1988)).

As it stands, the Court does not have enough information to order the drastic relief Plaintiff seeks. For one thing, the parties have provided very little information on the state court proceedings, including whether any state court injunction remains in effect. At this point, the Court is also without other information it considers relevant to its analysis, including whether the Hawker is still making commercial flights or otherwise generating revenue for any of the Defendants or the parameters of the receivership Plaintiff envisions. The motion is denied and, if Plaintiff renews its motion, it should provide the Court with more information, including a proposed receivership order, and the Court will consider whether a hearing is warranted. <u>See</u> <u>generally</u> <u>United States v. Bonanno Organized Crime Family of La Cosa Nostra</u>, 683 F. Supp. 1411, 1452 (E.D.N.Y. 1988) (granting hearing on government's motion that, among other things, defined the scope of the proposed receivership).

CONCLUSION

Based on the foregoing discussion, the Court orders the following:

Plaintiff's motion to dismiss the Wu Defendants' counterclaims and strike certain affirmative defenses (Docket Entry 12) is GRANTED IN PART AND DENIED IN PART. It is denied as to the Wu Defendants' conversion counterclaim and their

defamation counterclaim arising out of Plaintiff's allegedly false filing with the FAA. It is granted as to the tortious interference with contractual relations and fraud counterclaims and as to the remainder of the defamation counterclaims. The Wu Defendants may amend their counterclaims within twenty-one (21) days from the date of this Order.

The Wu Defendants' personal jurisdiction and election of remedies affirmative defenses are struck, as is their jury demand. The Court does not strike the concurrent state court proceedings and payment affirmative defenses.

Plaintiff's motion to dismiss the Maine Defendants' counterclaims and strike an affirmative defense (Docket Entry 13) is DENIED WITHOUT PREJUDICE. The Maine Defendants are directed to file their answer and opposition papers with the Court forthwith and not later than five (5) days from the date of this Order. Upon the Maine Defendants' compliance, Plaintiff may renew its motion with a one-page letter motion to the Court. No additional briefing from either side will be permitted.

Plaintiff's motion for a receiver is DENIED at this time. Should Plaintiff move again for the appointment of a receiver, it shall provide the Court with the additional information described above and submit a proposed receivership order.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     February __3__, 2012
           Central Islip, New York